UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RONNY FRIEDHOFER,

    Plaintiff,

v.                                                    Case No:   2:14-cv-477-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

**ORDER**

This cause is before the Court on Plaintiff, Ronny Friedhofer's Complaint (Doc. 1) filed on August 20, 2014.   Plaintiff, Ronny Friedhofer seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits and supplemental security income.   The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.   For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

    **I.   Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.   Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905.   The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.  Procedural History

On May 11, 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income asserting a disability onset date of June 14, 2005. (Tr. p. 107-108, 207). Plaintiff's applications were denied initially on July 12, 2011, and on reconsideration September 28, 2011. (Tr. p. 107, 108, 133, 134). A hearing was held before Administrative Law Judge Dwight Evans on September 19, 2013. (Tr. p. 35-82). The ALJ issued an unfavorable decision on September 25, 2013. (Tr. p. 18-29). On June 20, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. p. 1-4). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on August 20, 2014. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (See, Doc. 17).

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[1](citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in

---

1 Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. Ap. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2011. (Tr. p. 20). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 14, 2005, the alleged onset date. (Tr. p. 20). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative osteoarthritis of the lumbar spine and left foot, affective mood disorder, anxiety, and peripheral neuropathy likely from alcoholism, and alcohol abuse. (Tr. p. 20). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. p. 24). At step four, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work, such that Plaintiff is able to occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, has unlimited ability to push and pull, has the ability to understand, remember and carry out simple instructions. (Tr. p. 22). The ALJ decided that Plaintiff is not capable of performing his past relevant work as a Construction Worker II, Truck Driver, or Industrial Truck Operator (fork lift driving). (Tr. p. 27). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs in significant numbers in the national economy which Plaintiff is able to

perform, such as Counter and Rental Clerk, Cashier II, Parking Enforcer Officer, and Order Caller. (Tr. p. 28). The ALJ determined that Plaintiff has not been under a disability from June 14, 2005 through the date of the decision. (Tr. p. 29).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II. Analysis**

Plaintiff raises one issue on appeal which is that the ALJ substituted his opinion for expert medical opinion evidence. Within the first issue is also the issue of whether the ALJ properly evaluated Plaintiff's alcohol abuse.

**A.   Whether ALJ substituted his opinion for expert medical evidence**

Plaintiff argues that Plaintiff's condition worsened over time, and that in June 2012, Plaintiff went to the emergency room at Naples Community Hospital and was diagnosed with peripheral neuropathy, history of old back injury, history of bilateral ankle fractures, and alcohol abuse. On August 7, 2013, Rajan Sareen, M.D. completed a Residual Functional Capacity Questionnaire finding Plaintiff was more limited than the ALJ's findings. Plaintiff argues that the ALJ improperly discounted Dr. Sareen's opinion. Plaintiff also argues that the ALJ improperly relied on psychologist Nancy Kelly's opinion and discounted the findings of Sam Pinosky, M.D., on a June 12, 2012 visit to Naples Community Hospital. Plaintiff argues that the ALJ substituted his opinion for the expert medical opinions in the record.

The Commissioner responds that the ALJ did discuss the evidence and assessment from Dr. Sareen, and determined that Dr. Sareen's opinion was entitled to little weight because Dr. Sareen's evaluation was accompanied by little or no treatment records. The Commissioner contends that the ALJ did consider the findings of Dr. Pinosky who examined Plaintiff while in the hospital for detoxification, but chose to rely on the consultative examination Dr. Nancy Kelly.

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age

education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.,* 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

An ALJ is not permitted to substitute his judgment as to a "claimant's condition for that of the medical and vocational experts." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982),

*See also, Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 865 (11th Cir. Feb. 9, 2012) and *Aponte v. Comm'r of Soc. Sec.*, 2013 WL 178336, *6 (M.D. Fla. Jan 17, 2013).[2]

### 1. Naples Community Hospital June 2012

Plaintiff argues that Plaintiff went to Naples Community Hospital complaining of chronic pain in his back, both ankles, and both legs. The ALJ discussed Plaintiff's visit to Naples Community Hospital in June 2012. (Tr. p. 25). The ALJ noted that Plaintiff presented with complaints of needing alcohol detoxification due to chronic pain in his back, ankles and legs. (Tr. p. 25). The ALJ noted that he was briefly hospitalized and given Librium and Motrin for pain, and placed on an alcohol withdrawal protocol. (Tr. p. 25). The ALJ noted that the Hospital reported Plaintiff's physical examination was within normal limits. (Tr. p. 25).

The record reflects that on June 8, 2012, Plaintiff went to Naples Community Hospital with chronic alcohol abuse and intoxication claiming that he drinks alcohol due to chronic pain in his back, both ankles, and both legs. (Tr. p. 426-28). He was treated with Librium and was to take Motrin as needed for ankle pain. (Tr. p. 430). Plaintiff's physical examination was within normal limits. (Tr. p. 431-32). The ALJ did consider these records from the Naples Community Hospital in his opinion, and the Court finds no error.

### 2. Dr. Sareen

Plaintiff argues that the ALJ erred in giving the opinion of Rajan Sareen, M.D. little weight. The ALJ reviewed Dr. Sareen's records. (Tr. p. 25). Dr. Sareen records included x-rays dated

---

[2] Plaintiff asserts that the ALJ gave little weight to the opinion of Robert Whittier (his credentials were not included in his report) dated September 28, 2011. (Tr. p. 26). The ALJ found Plaintiff to be more limited than Mr. Whittier found. (Tr. p. 26, 118). The ALJ gave little weight to Mr. Whittier's opinion because the medical records showed that Plaintiff had a more limited residual functional capacity than found by Mr. Whittier, and Mr. Whittier did not have access to more recent medical records at the time he made his determinations. (Tr. p. 26). If any error exists by the ALJ giving the opinion of Mr. Whittier little weight is harmless because the ALJ found Plaintiff more limited than Mr. Whittier. A remand is not warranted when an ALJ commits harmless error. *Pichette v. Barnhart*, 185 F. App'x. 855, 856 (11th Cir. June 21, 2006).

August 7, 2013, and the ALJ noted that the x-rays showed "mild to moderate degenerative osteoarthritis of the lumbar spine, and healed fracture of the left foot and moderate degenerative osteoarthritis." (Tr. p. 25). The ALJ noted that Dr. Sareen found Plaintiff's gait to be within normal limits, his heel and toe walking was within normal limits, his range of motion of the lumbar spine was decreased, and his range of motion of his left ankle was decreased. (Tr. p. 25). The ALJ did consider the opinion of Dr. Sareen, but accorded the opinion little weight. (Tr. p. 27). The ALJ found that Dr. Sareen's opinion as to Plaintiff's limitations was too restrictive because Dr. Sareen had little to no treating relationship with Plaintiff, there were no treatment records to support the opinion, the x-rays provided revealed only mild to moderate limitations in the lumbar spine and ankle, and the medical evidence as a whole including other physical examinations in the record did not support Dr. Sareen's opinion, and therefore, the ALJ did not accept Dr. Sareen's opinion. (Tr. p. 27).

The records from Dr. Sareen comprise x-rays taken, a Residual Functional Capacity Questionnaire, and a Range of Motion Report Form all dated August 7, 2013. (Tr. p. 441-445). The x-rays show mild to moderate degenerative osteoarthritis in the lumbar region, a healed fracture calcaneum left foot, and moderate degenerative osteoarthritis in the foot. (Tr. p. 445). Dr. Sareen completed a Residual Functional Capacity Questionnaire (Tr. p. 441). For length of contact, Dr. Sareen indicated "PCP" which the Court interprets to mean primary care provider, however, no treatment records for Dr. Sareen were in the record. (Tr. p. 441). Dr. Sareen diagnosed Plaintiff with chronic back pain, bilateral leg pain, and left shoulder pain. (Tr. p. 441). Dr. Sareen determined Plaintiff's prognosis was fair, with symptoms of pain in multiple sites, and Plaintiff suffered from these symptoms frequently. (Tr. p. 441). Dr. Sareen indicated that Plaintiff was not taking any current medications. (Tr. p. 441). Dr. Sareen found that Plaintiff could

sit for 10 minutes and stand for 15 minutes at one time; would need to sit in a recliner or lie down during a normal work day for 2 hours; could sit for 1-2 hours, stand for 1-2 hours, and walk for 1-2 hours in an 8-hour work day; conditions would be aggravated with increased physical activity; would need to be able to shift positions from sitting, to standing during an 8-hour day; would need unscheduled breaks every 10 to 20 minutes lasting 10 to15 minutes during an 8-hour day; could never lift 50 pounds, could occasionally lift 10 to 20 pounds, and could frequently lift less than 10 pounds; would be limited in left arm reaching, and slightly limited in left hand and finger manipulations; could stoop, crouch, kneel, and climb stairs about 50% of the time in an 8-hour work day; would have a reduced productivity level of 85%; would have good and bad days; would be absent from work 3 times per month; and, would have watery eyes, left shoulder, upper back pain, and difficulty sitting and standing for long periods of time. (Tr. p. 441-443). Dr. Sareen found some range of motion limitations in Plaintiff's right shoulder, and left ankle. (Tr. p. 444).

The ALJ did not accept Dr. Sareen's opinion. An ALJ may give little or no weight to a treating physician's opinion if the doctor's opinion is conclusory or if the doctor's own medical records do not support his opinion. In this case, Dr. Sareen's opinion is conclusory. Other than Dr. Sareen's opinion as to Plaintiff's limitations, the only medical records associated with Dr. Sareen were the x-rays. The x-rays show mild to moderate osteoarthritis, however, Dr. Sareen never discussed the findings of the x-rays in his opinion, included no records that he ever conducted a physical examination of Plaintiff, and had no records to support his findings as to Plaintiff's limitations. The ALJ did not err in not accepting Dr. Sareen's opinions as to Plaintiff's limitations.

### 3. Dr. Kelly and Dr. Pinosky

Plaintiff contends that the ALJ erred in failing to recognize that Plaintiff's mental functioning declined from Dr. Kelly's assessment in June 2011 to Dr. Pinosky's assessment in June 2012. The ALJ gave great weight to Nancy Kelly, Psy.D.'s opinion. (Tr. p. 26). The ALJ reviewed Dr. Kelly's psychological evaluation of Plaintiff conducted on June 27, 2011. (Tr. p. 25). The ALJ reviewed Dr. Kelly's findings, and noted that Dr. Kelly found Plaintiff's recent and remote memory to be mildly impaired, and his judgment fair. (Tr. p. 25). The ALJ found that Dr. Kelly determined that Plaintiff's exam was consistent with someone with substance abuse problems, but the substance abuse, "in and of itself" . . . [was] not significant enough to interfere with claimant's ability to function on a daily basis." (Tr. p. 25). The ALJ gave great weight to Dr. Kelly's opinion because she supported her opinion with relevant evidence, provided a good explanation for her opinion, and her opinion is consistent and supported by the medical evidence of record as a whole and by Plaintiff's activities of daily living. (Tr. p. 27). The ALJ limited Plaintiff's RFC by stating that he has the ability to understand, remember and carry out simple instructions. (Tr. p. 22). Dr. Kelly diagnosed Plaintiff with depressive disorder, alcohol dependence, chronic pain, financial problems, housing problems, vocational problems, and a GAF score of 65. (Tr. p. 401).

The ALJ summarized the medical evidence from Plaintiff's June 2012 visit to Naples Community Hospital for alcohol detoxification. (Tr. p. 25). The ALJ noted that Plaintiff was briefly hospitalized, and given Librium and Motrin for pain, and then placed on an alcohol withdrawal protocol. (Tr. p. 25). The ALJ noted Plaintiff did reasonably well and did not require any Lorazepam. (Tr. p. 25).

On June 8, 2012, Plaintiff was admitted to Naples Community Hospital, and received a psychiatric consultation by Sam Pinosky, M.D. (Tr. p. 433). Plaintiff appeared at the hospital to receive assistance with an alcohol problem. (Tr. p. 433). Plaintiff reported his history of alcohol abuse, and Dr. Pinosky noted that Plaintiff had not seen a psychiatrist in over a year. (Tr. p. 433). Dr. Pinosky found Plaintiff to be pleasant, mildly anxious, fully oriented, speaking fluently in an organized fashion, not delusional, non-hallucinating, not suicidal, insight limited, and focused on his lower extremity discomfort. (Tr. p. 434). Dr. Pinosky's impression was that Plaintiff was alcohol dependent, history of panic disorder with phobic avoidance, asking for assistance, and having lower extremity discomfort with possible neuropathy. Dr. Pinosky prescribed medications for him. (Tr. p. 434). Dr. Pinosky diagnosed Plaintiff with Alcohol dependence, alcohol withdrawal, panic disorder with agoraphobia, lower extremity discomfort, stress of chronic pain and unemployment, and GAF score of 35. (Tr. p. 434).

Plaintiff argues that his GAF score decreased from 65 to 35, and the ALJ should have recognized that Plaintiff's mental functioning declined from Dr. Kelly's opinion of June 2011 to Dr. Pinosky's opinion of June 2012. "The GAF Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations." *Mathis v. Astrue*, 2008 WL 876955, *7, n. 4 (M.D. Fla. March 27, 2008) (citing Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") (4th ed. 1994 at 32). A GAF score is a subjective determination based on a clinician's judgment of a person's overall level of functioning. *Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1293 (M.D. Fla 2009) (citation omitted). Even though GAF scores have been cited in social security cases, "the Commissioner has declined to endorse the GAF score for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no

'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citations omitted). A low GAF score by itself is not necessarily determinative of a severe mental impairment. *Bailey v. Astrue*, 2010 WL 3220302, *8 (M.D. Fla. Aug. 13, 2010). The Court determines that simply comparing two GAF scores on two different days is not sufficient to determine that Plaintiff's mental functioning declined. The Court must look at the opinions of both Dr. Kelly and Dr. Pinosky, and not just the GAF scores.

In the instant case, the ALJ reviewed Dr. Kelly's opinion and found her opinion to be supported by relevant evidence and was consistent and supported by the medical evidence of record and by Plaintiff's activities of daily living. Dr. Kelly found Plaintiff's recent and remote memory to be mildly impaired, and his judgment fair, and the ALJ accounted for this finding by limiting Plaintiff's RFC to understanding, remembering and carrying out simple instructions. Dr. Pinosky found Plaintiff to be pleasant, mildly anxious, fully oriented, speaking fluently in an organized fashion, with limited insight, and focused on his lower extremity discomfort. Dr. Pinosky did not include any functional limitations for Plaintiff. A review of Dr. Kelly's and Dr. Pinosky's records do not indicate that Plaintiff's functional limitations declined from June 2011 to June 2012, and the Court finds that the ALJ did not err in giving great weight to Dr. Kelly's opinion of June 2011 in determining Plaintiff's RFC.

**A. Whether the ALJ erred in failing to properly consider Plaintiff's alcohol abuse**

Plaintiff asserts that the ALJ erred in failing to evaluate the impact of Plaintiff's alcohol use on Plaintiff's limitations. The Commissioner asserts that a secondary sequential evaluation relating to alcohol use must be conducted only if a plaintiff is determined to be disabled and if his

alcohol abuse is determined to be material to the disability. The Commissioner asserts that the ALJ did not find Plaintiff to be disabled when considering his alcohol abuse, and therefore, the ALJ did not need to consider whether Plaintiff's alcohol abuse could be material to his disability.

If a claimant is found "disabled and ha[s] medical evidence of [] drug addiction or alcoholism, we must determine whether [the] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). "The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability (the 'materiality determination') is whether the claimant would still be found disabled if he stopped using drugs or alcohol." *Doughty v. Apfel*, 245 F.3d 1274, 1279 (11th Cir. 2001) (citing 20 C.F.R. § 404.1535(b)(1). In the instant case, the ALJ did not find Plaintiff to be disabled, therefore, the ALJ did not err in failing to determine whether alcoholism was a contributing factor material to the determination of disability.

### IV. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 26, 2015.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties